THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v.
JOHN GREENWALL, Appellant.

Upon the trial of an indictment for murder, it appeared that the crime was committed by some one who had burglariously entered the house of the deceased. Defendant was sought to be connected with the crime by circumstantial evidence; he was sworn as a witness in his own behalf, On cross-examination he was examined as to his connection with another burglary at the house of one M. in the night-time, which he denied. Upon re-examination he denied that he had ever entered any man's house in the night-time with intent to steal. M. was subsequently called by the prosecution and permitted to testify, under objection, to facts showing that defendant did burglariously enter his house in the night-time. *Held*, error; also, that the incompetent evidence was damaging in its nature and could not be said to have been harmless, and so its reception required a reversal.

(Argued January 19, 1888; decided February 7, 1888.)

APPEAL from judgment of the Court of Sessions in and for the county of Kings, entered May 27, 1887, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts so far as material are stated in the opinion.

*C. F. Kinsley* and *A. Suydam* for appellant. The provision of section 183 of the Penal Code that the felony must be " either upon or affecting the person killed or otherwise are words of limitation, and it must be construed so as to give some force and effect to every word. (*In re N. Y. & B. Bridge*, 71 N. Y. 527, 550 ; *People* v. *McGloin*, 91 id. 241, 250.) The court erred in charging the jury that the *corpus delicti* was established as matter of fact, and in submitting to them only the question whether the defendant was the man who committed the crime. (Penal Code, § 181.) This court has now the powers to review a capital case upon the merits and to grant a new trial, although no exception was taken. (Code Crim. Pro., § 485 ; *Chapman* v. *E. R. Co.*, 55 N. Y. 579, 587.) It was error to admit the evidence of Mr. Mohring in

rebuttal to contradict defendant. (*People* v. *Ware*, 29 Hun, 473; affirmed, 92 N. Y. 653; *Stokes* v. *People*, 53 id. 164, 175.)

*James W. Ridgway* for respondent. An error in ruling upon the trial which could not have prejudiced the appellant will not be deemed on appeal a sufficient ground for reversing the judgment. (*Tenney* v. *Berger*, 93 N. Y. 524; *Story* v. *Williamsburg Masonic Ass'n*, 95 id. 474; *Thom* v. *Turck*, 94 id. 90; *Ellwanger* v. *Fish*, 60 id. 651; *Flanigan* v. *Madden*, 81 id. 623; *Dowes* v. *N. Y. C. R. R. Co.*, 56 id. 664.) The court is not bound to adopt language of counsel requesting to charge a given preposition, even when correct in the abstract, provided the court charge the law correctly and substantially as requested. (*Moett* v. *People*, 85 N. Y. 373.) After the case has been properly submitted to the jury the court cannot be called upon to repeat in different words, or to pass upon abstract or theoretical questions. (*People* v. *McCallum*, 3 N. Y. Cr. R. 189; *People* v. *Mills*, 3 id. 184.) Objection does not lie to the questions of the prosecution on the ground that they showed specific acts tending to prove bad moral character. (*Pontius* v. *People*, 82 N. Y. 339.) The person who committed the murder was a burglar and it was material and competent to show that the prisoner was a professional burglar, especially as he offered himself as a witness, and questions asked to affect his credit were proper. (*Maine* v. *People*, 9 Hun, 117, 118; *Brandon* v. *People*, 42 N. Y. 265.) Such questions are in the discretion of the court, and are not subject to review, except in cases of manifest abuse or injustice. (*Western Turnpike* v. *Turner*, 32 N. Y. 127; 34 id. 223.)

EARL, J. The defendant was indicted for the murder of Lyman S. Weeks, in the city of Brooklyn, on the 15th day of March, 1887. He was tried and convicted of murder in the first degree, and has brought this appeal directly to this court under chapter 493 of the Laws of 1887.

It is undisputed that Mr. Weeks was killed by a pistol shot fired by some person who had burglariously entered his house in the night-time. There was no witness who saw or heard the shot fired or was able to testify that the defendant was the person who fired it, or that he was present in the house of Mr. Weeks on the night of the homicide.

The evidence on the part of the People to connect the defendant with the crime, and to establish his guilt was, in substance, as follows: Three witnesses were called who gave evidence tending to show, by their identification of him, that he was in the vicinity of Mr. Weeks' house, on the night of the fifteenth of March, near the time when the homicide was committed; that shortly before that day, he had a pistol with the same calibre as the one had which was fired at Mr. Weeks; and that after the homicide it disappeared from his possession; that on the night of the homicide he wore a Prince Albert coat which also thereafter disappeared. In addition to this, there was evidence that the defendant was a burglar, an associate of criminals, and that shortly after the homicide he confessed the crime to two of his criminal comrades. At the time of his arrest he denied that he had ever been in the city of Brooklyn; and that denial was, upon the trial, shown to be false.

On the part of the defense, evidence was given tending to throw some doubt upon the identification of the defendant by the three witnesses called upon the part of the People to show his presence near Mr. Weeks' house on the night of the homicide. The defendant produced as a witness Charles Miller, who was jointly indicted with him for the same murder, and he gave evidence tending to show that the person who committed the crime was Paul Krause, and that the defendant had no connection with it; and there was some other evidence on the part of the defense tending, in some degree, to show that Krause was implicated in the crime. The defendant was sworn as a witness on his own behalf and positively denied his guilt, and his presence at or near the scene of the crime on the night of the fifteenth of March.

For the purpose of showing that the defendant did not tell the truth when he denied that he had ever been in the city of Brooklyn, George Mohring was called as a witness on behalf of the People, and testified that the defendant worked for him in the city of Brooklyn twenty-two days, commencing on the 6th day of January, 1887, and during that time slept in his house. And his evidence was confirmed by that of his wife. The defendant also testified that he worked and lived with Mohring in the city of Brooklyn as testified to by him. Upon his cross-examination, he was questioned as to various crimes with which he was supposed to have been connected, and he admitted that he had been in the state prison. He was then examined as follows in reference to a crime alleged to have been committed at Mr. Mohring's house:

"Q. After you left Mohring's house did you and Butch Miller, within a few days afterwards, enter Mohring's house about one o'clock in the morning? A. No. Q. Were not you and Butch Miller found in Mohring's house about one o'clock in the morning? A. No. Q. And that you ran into the cellar and out of the house, leaving behind you a knife and your shoes? A. No. Q. And didn't you ask him two days before you went in the house whether he had a pistol in his house or not? A. No. Q. Did you ever ask him if he ever had burglars enter his house? A. No. Q. Did you say to him, 'Would you shoot a burglar if you found him in the house?' and didn't he reply to you that he had no pistol to shoot anybody with? A. No; I didn't care whether he had a pistol in his house or not."

Upon his re-examination on his own behalf, he denied that he ever entered any man's house in the night with intent to steal. Then, after the defendant had rested his case, Mohring was recalled for the prosecution and the following took place:

"Q. Did you ever see that knife before? A. I never seen it until he came to work for me; Greenwall had that when he worked for me.

Defendant's counsel moved to strike out the last answer as it is collateral, and the prosecuting attorney is contradicting his own witness.

THE PROSECUTING ATTORNEY — The evidence is admissible in rebuttal; the defendant swore he was not in the house of this witness; and it is offered as to character.

THE COURT — Admitted as to whether the accused broke into this witness' house.

Q. When Greenwall worked there did you see him have that knife? A. Yes. Q. Do you remember his whetting it on a stone to shave himself? [Objected to.] Q. Was your house entered at any time after Greenwall left there? A. Yes. Q. At what time in the night? A. One o'clock. Q. How did you know there was anybody in the house at one o'clock at night? A. I slept in the front bed-room, and I heard somebody up in the garret; I heard somebody sneak up there without shoes on; then I went in the back room and called my wife, and we went up there together; then when I came up in the garret I saw two men up there. Q. Did you see two men in the room? A. Yes. Q. Did you speak to the two men? A. I spoke in German "What are you doing here?" Then they gave the answer: "Nothing." Q. Who were the men, if you know? A. I can swear to it that Greenwall was one of them, and the other I did not know. Q. Did they answer you in German or in English? A. They told me in German; then I turned around to come down stairs and they came after me, and passed me and threw the lamp out of my hands, and went down three flights of stairs, down through the cellar, out. Q. Did you go down the cellar after them? A. I went down the cellar until they went out the cellar. Q. Did you find anything in the cellar? A. I had a shelf there by the door where they broke in, and on the shelf lay these two pair of shoes and this knife. Q. How did these two men enter this house? A. They came through the garden and went into the cellar; in the cellar there is a partition of boards; they busted one of the boards off and went in from the cellar up. Q. Was anything the matter with any of the bolts? A. They broke one of the boards out; then they went through the partition; and I had about fifty bottles of sherry wines there and they moved that. Q. Did you see any clippings to indicate that a knife had been

used! A. No. The COURT — Tell what else you saw. A. I saw they cut the bolt out and through that made an entrance. Q. A few days before you discovered Greenwall in your house, did you have any talk with him about burglars, pistols or anything of that kind? [Objection sustained.]"

It is too clear for reasonable dispute that this evidence was incompetent. It was not offered for the purpose of showing that the defendant was in Brooklyn at the time, and thus contradicting what he stated at the time of his arrest, because that had already been proved by Mohring and his wife, and the defendant had admitted it in his own evidence. It was not admissible for the simple purpose of contradicting the evidence of the defendant, and thus discrediting him by the contradiction, because his cross-examination as to the burglary upon the house of Mohring was collateral; and it is familiar law that the People were bound by his answers given upon such cross-examination, and that they could not afterward call witnesses to contradict him in reference to such answers. (*People·v. Stokes*, 53 N. Y. 164; *People* v. *Ware*, 29 Hun, 473; affirmed, 92 N. Y. 653.) Nor was it admissible in rebuttal of the defendant's evidence given on his re-examination, that he had never entered any man's house in the night time for the purpose of stealing. That evidence was rendered competent by the course of his cross-examination, and did not lay the foundation for proof of the crime committed at Mohring's house. It was not competent for the purpose of showing that the defendant was a burglar, and addicted to the crime of burglary. It is never competent upon a criminal trial to show that the defendant was guilty of an independent crime not connected with or leading up to the crime for which he is on trial, except for the purpose of showing motive, interest or guilty knowledge, and this evidence was not proper or competent for that purpose. (*People* v. *Sharp*, 107 N. Y. 427.) Nor was it competent in rebuttal of evidence introduced by the defendant on his own behalf as to his good character. It is never proper for the purpose of impeaching the character of a party or a witness to call witnesses to prove specific acts

of dishonesty, immorality or crime.  If the People desired to prove that the defendant s character was bad, the only course open to them was to call witnesses who were acquainted with his character.  (*Commonwealth* v. *O'Brien*, 119 Mass. 342; *Troup* v. *Sherwood*, 3 John. Ch. 558; *Wehrkamp* v. *Willet*, 4 Abb. Ct. App. Dec. 548; *Bakeman* v. *Rose*, 18 Wend. 146; *People* v. *Rector*, 19 id. 569; *Corning* v. *Corning*, 6 N. Y. 97; *Rathbun* v. *Ross*, 46 Barb. 127; 1 Greenleaf's Evidence, § 461.)  But there was no foundation for calling witnesses to impeach the defendant's character.  He had not by any evidence on his part really put his character in issue. All the evidence on the part of the People as well as that on the part of the defense tended to show that his character was bad.  There was but a single witness, who, by any possibility, could be said to have been called by the defendant as to his character, and the whole of his direct evidence is as follows :

"I live at 856 Eighth avenue, New York ; my business is tailor ; I am engaged in business for myself ; I have known the defendant here, John Greenwall, since August, 1884 ; he worked for me from that time until Thanksgiving; he is a pretty fair tailor by trade.  Q. Did you discharge him, or did he leave you ?  A. He left me.  Q. During the time he worked for you did you find him a good workman and an honest man ?  A. I cannot complain about him ; he was a good workman and didn't steal anything."  On his cross-examination this witness testified that while the defendant worked for him, he told him that he left Germany because he had killed a man.  Here was certainly no evidence as to his good character, and there was nothing in this evidence which justified the People in entering upon a general impeachment of his character.

The evidence of Mohring above set out was, therefore, clearly incomptent.  It was very damaging in its nature, and we cannot say that it did not have an important influence upon the minds of the jurors in reaching their verdict.  The defendant's guilt was not so clearly established by other proof that it can be said that this evidence was harmless.  It was objected to ; the atten-

Statement of case.

tion of the court and of the district attorney was clearly called to its incompetency, and under such circumstances we are of opinion that the error in its reception can not and ought not to be disregarded. A person on trial for his life is entitled to all the advantages which the laws give him, and among them is the right to have his case submitted to an impartial jury upon competent evidence.

The judgment should, therefore, be reversed, and new trial granted.

All concur.

Judgment reversed