THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* RAYMOND M. FERNANDEZ and MARTHA BECK, Defendants.

Supreme Court, Special Term, Queens County, May 11, 1949.

*Herbert E. Rosenberg* for defendants.

*James N. Gehrig, District Attorney* (*Philip Huntington* of counsel), for plaintiff.

CUFF; J. This is a motion by the defendants pursuant to subdivision 2 of section 344 of the Code of Criminal Procedure to remove their trial for first degree murder from the county of Nassau on the ground that a fair and impartial trial cannot be had in that county.

The defendants were arrested in the State of Michigan on or about March 1, 1949, for the alleged murder of two persons in Michigan on or about February 26, 1949.

While the defendants were still in custody in Michigan, criminal proceedings charging first degree murder were commenced against them on March 3, 1949, in Nassau County. After a Governor's hearing in Michigan the extradition of the defendants sought by the Nassau County authorities was granted over the defendants' protests on March 8, 1949, and the defendants were indicted in Nassau County on March 22, 1949, for first degree murder alleged to have been committed at Valley Stream, Nassau County, on or about January 4, 1949. The defendants pleaded not guilty to the indictment herein on March 24, 1949, and their trial, first set for May 2d, has been continued to May 16th.

Other preliminary proceedings have been had which I do not regard as germane.

Section 344 of the Code of Criminal Procedure provides: " A criminal action, prosecuted by indictment, may, at any time before trial, on application of the defendant, be removed from the court * * * in the following cases; 2. From * * * a county court, to a term of the supreme court held in another county, on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending."

It is the contention of the defendants that the atmosphere of Nassau County has been so thoroughly charged with prejudice against them by reason of articles appearing in the local daily newspapers, which circulate practically exclusively in Nassau County, that they cannot expect a fair trial in that county. Two

supporting affidavits by investigators who swear that they recently canvassed people in Nassau County are to the effect that the overwhelming opinion of the residents is that the defendants deserve to be electrocuted; that a trial is unnecessary.

The affidavit of one of the investigators (Keen) merely identified the persons to whom he spoke by location. The other investigator (Bradshaw) gave the time, place, name and address, together with quotations of forty-seven persons interviewed.

The District Attorney was able to check the (Bradshaw) affidavit. Members of the police department investigated almost all of the persons named therein: eight denied, seven admitted the statements attributed to them; twelve claimed inaccuracies; in seven instances the persons said to have been interviewed could not be found; no report was made of the remaining thirteen persons interviewed.

Clippings from the two (there are no others) Nassau County daily newspapers — *Newsday* and the *Daily Review Star* — are included in the motion papers. It is contended that each of these papers enjoys a daily circulation of about 100,000, and that the population of Nassau County is about 551,000.

Commencing March 2d, and continuing through April 12th these two papers made accounts of the alleged murders, charged to the defendants, prime news items. The nature of the story was such that it made attractive copy for publication. The headlines with respect to the accounts frequently were spread clear across the first page, sometimes in double lines, sometimes covering the entire page, in *Newsday* and at times headlines crossed the front page of the *Daily Review Star*. In each paper, the stories were carried over to other pages under 2, 3, 4 and 5 column headings, the accounts being in fulsome detail with respect to the alleged murder in Nassau County, as well as two alleged Michigan murders. Several pictures of the accused, as well as the police and prosecutors, formed an important part of each day's accounts. Special articles relating to the crimes alleged and to the defendants frequently appeared in each paper. Throughout all of the publicity there sounded a particular note, namely: the Michigan law provides life imprisonment for persons convicted of first degree murder, whereas this State condemns such persons to death, and the defendants were extradited to receive the death penalty for the cruel and revolting " murders which they committed."

As the necessary procedural steps were unraveled in the proceedings, the news articles won more prominence. *Newsday* on several days devoted its entire front page to the subject. The

defendants make a particular point of the language used in the articles cited. The articles are characterized in the headings in varying forms as the " Lonely Heart Killing ". The text in connection with pictures repeatedly refers to the defendants as " love killers ". A picture of a house at Valley Stream, whereat the defendants lived, is designated as the " murder house ". Pictures of the deceased's relatives described them as " relatives of murder victim ". I have counted sixty-nine times in the articles where defendants are referred to as " Killers " " Murderers " or " Slayers ", or similar appellations.

A point raised by the defendants is that the wide publicity and its incriminating character were inspired by the acts of the prosecutor and his assistants. Even the motive of the District Attorney in applying for the extradition of the accused is challenged by the defendants as bearing upon their claim that prejudice abounds in Nassau County against them. It is their contention that the public of Nassau County understands that they were brought here " to burn ".

The District Attorney answers that his reason for extraditing the defendants, aside from his general duty to prosecute offenders of the law, was that their first murder, in point of time, was perpetrated in Nassau County.

Of course, the prosecuting authorities have no control over the press, and indeed it is fortunate that they do not. Publicity is often a help in discovering crime and in prosecuting the guilty as well as exonerating the innocent, which aid society would not want to be deprived of.

There can be no doubt that prosecutors and the police are fruitful sources of crime news. Those offices, it cannot be denied, control, to a large degree, the amount and kind of material that is furnished to the press. It is equally true that neither office controls the treatment of the news by the press. On an application of this kind, I do not regard it my duty to search the motives of the prosecuting authorities. Nor is the treatment of the news as such concerned with this motion. The relief sought here may not be granted or denied by inquiring into the causes of the publicity, unless it was shown that the defendants deliberately created adverse publicity. This application treats solely with the effect of the publicity upon the public mind. Should that effect be found by the court to prevent a fair and impartial trial of the accused, then the right to a change of venue becomes absolute (*People* v. *McLaughlin,* 150 N. Y. 365).

A decision of this kind is sometimes misunderstood by the public. Therefore, it should be noted that where a change of

venue is allowed, no reflection is cast upon the fair-mindedness of the jurors of the county from which the case is removed.

It is the unconscious bias, even prejudice — ofttimes honestly denied — which subdivision 2 of section 344 of the Code of Criminal Procedure seeks to counteract. In *People* v. *McLaughlin* (*supra,* p. 379) referring to the state of mind of the public, the Court of Appeals said:—'' Its influence is subtle, insidious and often unconsciously warps the judgment and blinds the intelligence of those surrounded by its atmosphere.''

It also should be noted that in this determination no criticism of the press is made. Under our freedom of expression, constitutional guarantee, the press is and should be wholly unrestricted in its treatment of news. The mere fact that such treatment may create a condition which militates against a fair trial of accused persons is no cause for complaint against the press, nor is it a reason for altering our journalistic concepts. Because a situation, inimical to the interests of the accused, results from the treatment of news by a publisher is no fault of his. He may have performed an important public service by stressing certain news. and in his work of disseminating news he should not be restrained by the fear of its consequences upon the public mind. The statute (§ 344, subd. 2) was enacted to alleviate just such a situation when it occurs, and for that purpose it is adequate.

That the news accounts about the defendants in the two Nassau County dailies were replete with detail, description and expressions which would impress the readers in advance of trial that the defendants were guilty, cannot be questioned. No one could read the articles without being convinced that the trial would resolve itself into a mere formality. The sampling of public sentiment, as expressed in the affidavits of Keen and Bradshaw, accurately reflects the effect of the treatment of the news by the press in this instance.

I am constrained to hold that a fair and impartial trial cannot be accorded these defendants in Nassau County. The trial is removed to Bronx County.