Chief Judge Desmond (dissenting).
Selection and swearing in of this jury was completed on May 19, 1959 and the trial was adjourned until May 25. Meanwhile there appeared variously in 3 different New York newspapers 4 articles and column items making these statements:
That defendant was a cousin of Gabriel Genovese, “ convicted narcotics boss, and reportedly chief lieutenant of Frankie Garbo, the ‘ underworld boxing commissioner ’ who is under indictment and being sought.”
That defendant was “ barber by royal appointment to Frankie Garbo ”.
That there were 18 charges against defendant but that he could be indicted on 2 only since the Statute of Limitations had run as to the others.
That the manager of a certain boxer had stated and was prepared to testify that his fighter could not get bouts until he ‘ ‘ cut in ’ ’ defendant; that the fighter got 18 engagements when he did so “ cut in ” defendant and that he got no more when he “ cut out ” defendant.
These inflammatory writings were read by all but 6 of the 14 jurors (12 plus 2 alternates). Of the 8 who did read them, 2 were excused when they admitted that “ some impression ” had been left in their minds and that their verdicts might be interfered with. The other 6, on questioning by the court, asserted that they had not been influenced by their reading and that they could despite the reading arrive at a fair verdict. A motion by the defense for a mistrial on this ground was denied and the trial proceeded before a jury including 6 members who recalled seeing the articles, or some of them.
The prosecutor’s brief says that “ the four newspaper accounts cannot be categorized as inherently harmful to the *486 defendant.” This remarkable statement expresses the idea that jurors would not be influenced against the defendant by disclosures that he was a cousin of a convicted narcotics boss and chief lieutenant of an underworld boxing commissioner who had been indicted and was a fugitive, and that there were 18 charges against the defendant of which, because of technicalities, 2 only could be brought to trial. This is a new, strange and dangerous doctrine quite at war with our good old rule that “ the right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury, is a fundamental principle of criminal jurisprudence ” (People v. McLaughlin, 150 N. Y. 365, 375). Jurors who would not be influenced by accusations such as those made in the newspapers against this defendant would either be of a sort whose minds for some reason do not react at all to what they read, or those whose existing’ prejudices had already hardened to a point where nothing could worsen them.
In his concurring opinion of last June in Irvin v. Dowd (366 U. S. 717, 729-730) Justice Frankfurter wrote this:
“ One of the rightful boasts of Western civilization is that the State has the burden of establishing guilt solely on the basis of evidence produced in court and under circumstances assuring an accused all the safeguards of a fair procedure. These rudimentary conditions for determining guilt are inevitably wanting if the jury which is to sit in judgment on a fellow human being comes to its task with its mind ineradicably poisoned against him. How can fallible men and women reach a disinterested verdict based exclusively on what they heard in court when, before they entered the jury box, their minds were saturated by press and radio for months preceding by matter designed to establish the guilt of the accused. A conviction so secured obviously constitutes a denial of due process of law in its most rudimentary conception. ’ ’
If we change the second last sentence of that quotation so as to make it speak of saturation of jurors’ minds by the press after they have been sworn as jurors, the applicability of the quotation is perfect. Elsewhere in the Irvin opinion Justice Frank *487 furter spoke of the difficulty or impossibility of getting an unaffected jury when pressures have been exerted before trial and during the trial. Earlier, in Marshall v. United States (360 U. S. 310, 312-313), the Supreme Court had said as to damaging information about a defendant which cannot be put into evidence: ‘ ‘ The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution’s evidence.”
Exercising its supervisory powers over criminal cases tried in the Federal courts, the Supreme Court in Marshall {supra) reversed the conviction and granted a new trial because during the trial there had come before “ a substantial number of jurors ” information not nearly as destructive as that before us in this record. The court held that a reversal was required in the interests of justice even though all of the jurors had told the Trial Judge that they would not be influenced by the news articles and that they would decide the case on the record evidence only and felt no prejudice against defendant as a result of reading the articles. Our duty to our State and to our people requires us to hold to standards no lower than those supported in Irvin and Marshall. It is not that we are trying to protect this particular defendant or to punish or censor journalists. We are defending an institution fundamental to our society and our court system.
Under our constitutional free press guarantees it is probably impossible to prevent or punish these newspaper assaults on the minds of jurors. I refuse to concede, however, that the courts of this State are incapable of providing 12 jurors who have not been so exposed or that we must be satisfied by the incredible statements of jurors that they can read such stuff and then wipe it off their minds.
The judgment should be reversed and a new trial ordered.
Judges Froessel, Van Voorhis, Burke and Foster concur with Judge Fuld; Chief Judge Desmond dissents in an opinion in which Judge Dye concurs.
Judgment affirmed.