(47 App. Div. 415.).

## LENT v. RYDER.

(Supreme Court, Appellate Division, Second Department. January 30, 1900.)

VENUE—COUNTY JUDGE—DRAWING JURORS—INFLUENCE.

Though Laws 1892, c. 491, §§ 13, 14, amended by Laws 1893, c. 269, make it the duty of a county judge to attend at the drawing of jurors, and he may be appointed to do the drawing, it will not be presumed that a fair trial cannot be had in a cause in which the plaintiff was the county judge, and was present at the drawing of jurors as required, there being no charge of irregularity in such drawing; and a change of venue will not be granted on that ground alone.

Appeal from special term, Westchester county.

Action by Smith Lent against Edgar L. Ryder. From an order denying a change of venue, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

J. Rider Cady, for appellant.

Smith Lent, for respondent.

WILLARD BARTLETT, J. We ought not to reverse this order unless we are satisfied that there is reason to believe that an impartial trial cannot be had in the proper county, namely, the county of Westchester, as the motion is based solely on subdivision 2 of section 987 of the Code of Civil Procedure. The plaintiff is the county judge of Westchester county. As such it is his duty from time to time to attend at the office of the commissioner of jurors to witness and assist in the drawing of a jury for the supreme court. He may also be appointed by the officers who supervise the drawing to draw the 'ballots from the box. Chapter 491, Laws 1892, §§ 13, 14, as amended by chapter 269, Laws 1893. It was expected that this case would be tried at the December term, 1899, and the moving affidavit alleges on information and belief that the plaintiff, as said county judge, did participate in and direct the drawing of the petit jurors for that term. His answering affidavit, however, although not as explicit on this point as is desirable, indicates that it is the invariable custom in Westchester county for the commissioner of jurors to do the actual drawing, and that the county judge, though he might be designated to perform that duty under section 14 of the statute, really acts only as a witness of the proceedings, as does the county judge in every county where the general provisions of the Code prevail in regard to the selection of trial jurors. Code Civ. Proc. § 1044. The method of drawing jurors under the special statute relating to Westchester county is described by Judge Lent in his affidavit as follows:

"The names of the jurors for the whole county are entered in a book in alphabetical order, and to each name is given a number. The initial of the surname of each juror, together with his number, is written upon a card. The whole number of cards (there being, of course, as many cards as there are jurors,—about 3,500, I believe) is put into a box, and drawn out by the commissioner of jurors. The commissioner does not even know the number he has drawn until it is taken out of the box, and does not know the name of the juror whose number is drawn until the name is read from the book. It is impossible, therefore, that the plaintiff could, if he would, suggest the name or names of any one to be drawn, and have such suggestion acted upon.".

We think there can be no presumption of law that an impartial trial cannot be had in the county where one of the parties is the county judge, simply because he acts as an official overseer, in the manner stated, at the drawing of the petit jurors who are summoned to serve at the term of court at which the case is expected to be tried. Except in counties where the population exceeds 120,000, the constitution permits county judges to practice law in the supreme court, while the Code, as already pointed out, requires them to attend and witness the drawing of trial jurors to serve therein. Neither the constitutional convention of 1894 nor the legislature can have deemed it objectionable or unfair to other lawyers to allow the county judge to try cases before jurors whose names had been drawn from the box under his supervision. The objection seems no greater where the county judge appears before the jury, not as a lawyer, but as a litigant.

A different question would be presented if it appeared that in the functions exercised by the county judge at the time of the jury drawing there were any opportunity for misconduct on his part affecting the selection of the names, or any proof that he had attempted any wrongdoing in the matter. But there is not a suggestion of this kind in the case. On the contrary, the learned counsel for the appellant in his oral argument expressly disclaimed any such idea. We have here, therefore, the simple question whether the extent to which Judge Lent participates in the drawing of jurors in Westchester county gives us reason to believe that an impartial trial cannot be had in that county in a libel suit in which he is the plaintiff. It seems clear on this record that we must answer that question in the negative. If we were to adopt the broad rule which the appellant seems to think proper, a county judge could not prosecute in his own behalf a suit on a promissory note in the supreme court in his own county, but would have to submit to a change of venue upon the demand of the defendant.

It is argued in support of the appeal that the plaintiff will have an unfair advantage over the defendant in Westchester because the jurors there have learned to look upon the county judge as an exponent of the law, and also that, "by reason of the power of the county judge to excuse jurors from service in his court, all jurors would dislike to offend the plaintiff, and that, if any one of the jurors thought it likely that he might be a party in litigation before the plaintiff in his court, the plaintiff would have an unfair advantage over the defendant." Neither of these positions is tenable. We have never observed any reluctance on the part of juries at rural circuits to render a verdict against a party represented by the county judge as counsel on account of the official station or influence of the latter; nor have we ever found a class of jurors in Westchester or elsewhere who seemed likely to be influenced by such discreditable considerations as those above suggested. The case of Van Rensselaer v. Douglas, 2 Wend. 290, is not in point. There the venue was changed from Saratoga to Rensselaer because the circuit judge of the Saratoga district had been counsel for the plaintiff in that very case, as appears from the headnote. This was on the ground that the judge

was disqualified. In Stoddard v. President, etc. (Sup.) 16 N. Y. Supp. 621, also cited by the appellant, the action arose out of a railroad accident in which 27 passengers were injured, of whom 21 lived in Washington county, and the venue was changed from Washington to Schenectady on account of the feeling of hostility against the defendant in the community where the disaster occurred.. The case bears no likeness in any respect to the case at bar. Moulton v. Beecher, 1 Abb. N. C. 240, was a special term decision, which was not reviewed, as the plaintiff discontinued the action. Assuming that it was correct, —and I think it was,—the circumstances were so utterly different that it affords us no guidance here. The order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.