(164 App. Div. 540) ⸗

### BARNES v. ROOSEVELT.   (No. 304–11.)

(Supreme Court, Appellate Division, Third Department. November 25, 1914.)

VENUE (§ 50*)—CHANGE OF PLACE OF TRIAL—LOCAL PREJUDICE.

    In an action for libel brought in Albany county, the county of the plaintiff's residence, against a resident of another county, where the alleged statements reflected upon certain departments of the state government and upon the county organizations of both political parties in Albany county, and where the plaintiff had been for many years the Republican leader in that county, and had controlled the policy of a large newspaper therein, in which the defendant and his views had been vigorously assailed, the place of trial of the action will be changed to another county, to avoid any possible partiality in the jurors.

    [Ed. Note.—For other cases, see Venue, Cent. Dig. § 73; Dec. Dig. § 50.*]

    Howard, J., dissenting.

Appeal from Special Term, Albany County.

Action by William Barnes against Theodore Roosevelt. From an order denying defendant's motion for a change of the place of trial (87 Misc. Rep. 55, 149 N. Y. Supp. 291), the defendant appeals. Reversed, and place of trial changed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Bowers & Sands, of New York City (John M. Bowers and W. H. Van Benschoten, both of New York City, of counsel), for appellant.

Ivins, Wolff & Hoguet, of New York City (William M. Ivins, Harold J. Roig, and James S. Y. Ivins, all of New York City, of counsel), for respondent.

PER CURIAM. The order appealed from denied the motion of the defendant to change the place of trial from the county of Albany to a county to be named by the court. While the record is voluminous, the single question involved upon this appeal is whether there is reason to believe that an impartial trial cannot be had in the county of Albany. When such a conclusion is reached, the statute makes it the duty of the court to change the place of trial. The questions to be determined by the jury relate mainly to the truthfulness or falsity of certain statements made by the defendant regarding the plaintiff, the making of which the defendant will seek to justify. The statements also reflect upon certain departments of the state government, and

---

ᴕFor other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon both political organizations in the county. The issues thus involved are largely personal and political, and have been the subject of much comment by the parties to the action, as well as by the adherents of each.

The plaintiff has been a member of the Republican state committee for the district embracing the county of Albany, the place of his residence, for about 20 years, and has long been generally recognized as very influential in the councils of his party, and in fact as the leader and largely in control of the Republican organization of the county. During such time he has also been in control of the policy of a newspaper of large circulation and influence, in the columns of which, both before and after the commencement of this action, the defendant and his views have been vigorously assailed. While the personal and political activities of the plaintiff have doubtless engendered enmities to a greater or lesser extent, they have also resulted in creating obligations to the plaintiff, strong friendships, and a large personal and political following. The defendant, although for periods temporarily sojourning in the county of Albany, has long resided in the county of Nassau, at the extreme southerly end of the state, and were the place of trial located in that county, and the motion one to change the place of trial from the county of Nassau, the statements above made as to the relations of the defendant to his neighbors and other residents of his county would doubtless, to more or less of an extent, be applicable to such motion.

Under the statute either county of Albany or Nassau is a proper county to be designated as the place of trial, as being the county in which one of the parties resided at the time of the commencement of the action, yet in our judgment, under the peculiar circumstances of this litigation, neither party should be compelled to try the action in the county in which the other party resides. Jurors are but individuals, and are subject to impressions and influences of which often they are themselves unconscious. The fairness of the trial should be above suspicion, and the place of trial should be one as to which neither party shall have reasonable ground of apprehension as to the strict impartiality of each juror. For the foregoing reasons, we think that the order appealed from should be reversed.

The determination of this motion is in nowise affected by the allegations in the defendant's affidavit of possible irregularities or acts of favoritism on the part of any public officer of Albany county. Indeed, we think the charges in that regard utterly fail, and the action of this court is based wholly upon the grounds hereinbefore stated. Justice, as far as possible, must be administered without even the appearance of partiality.

The place of trial is therefore changed to the county of Onondaga.

HOWARD, J. (dissenting). I regret that I cannot concur with my colleagues in their conclusion that the venue in this case should be changed. William Barnes has sued Theodore Roosevelt for libel. The defendant alleges that he will not be able to obtain an impartial jury or get a fair trial in Albany county, and he is asking the court to or-

der the trial into some other county. The Code says that, "where there is reason to believe that an impartial trial cannot be had" (Code Civ. Proc. § 987) in the county where the venue is laid, the court may change the place of trial. Unless there is reason for such belief in this case, the place of trial cannot be changed, for the plaintiff brought his suit in the proper county—the county where the Code commanded him to bring it. And the courts must not lightly send suitors out of the county where the venue is properly laid. "Facts, and not the mere impressions and conclusions of the parties or their witnesses, should be considered and should control." People v. Long Island Railroad Co., 16 How. Prac. 106.

The reasons—or it would be better to say the matters which the defendant puts forth as reasons—why the trial should be removed from Albany county may be divided into four parts: First, by insinuation, he accuses the county clerk and other public officials, burdened with the duty of preparing the jury lists and drawing the jurors in Albany county, of the purpose of violating their oaths of office and violating the law by tampering with the jury system of the county to the detriment and prejudice of the defendant; second, he presents a report of the Bayne investigating committee, purporting to show that the jury lists are actually made up in a partisan and political way, and are not composed of the names of fair and impartial jurors, as they should be; third, the plaintiff is alleged to be the owner of a newspaper widely circulating in Albany county, which has published and is publishing matter antagonistic and hostile to the defendant; fourth, the plaintiff is alleged to be the leader of the Republican organization of Albany county, and therefore, and for that reason, exercises now, and will exercise at the trial, great influence over the jurors brought into court, and will obtain in this way an unfair advantage over the defendant.

Singling out the county clerk as the one official most likely to lend himself to "jury fixing," the defendant presents the following novel argument in support of his contention: He alleges that while the county clerk was state senator he had made up his mind to vote for the so-called "Agnew-Hart Racing Bill," and informed Senator Agnew of his purpose to do so; but subsequently, at the request of the plaintiff, he changed his mind and voted against the bill. Because of this circumstance the court is asked to conclude that the county clerk will now violate his oath and violate the law by tampering with the jury boxes in his custody. In other words, because an official on some previous occasion had performed a perfectly lawful act at the request of the plaintiff, this court is asked to conclude that on this occasion he will commit a crime. Such logic as this is unknown to the law, unknown to justice, repugnant to fair play, and contrary to common sense. William J. Grattan, the county clerk, has been elected and re-elected to public office time and time again by the voters of Albany county. His public career has been indorsed and repeatedly indorsed by his fellow citizens. If public approval counts for anything, the upright walk of Mr. Grattan's life has been well established. How

can the insinuation that he is ready to commit a crime have any weight or force with the court?

The injection of this extraneous matter into the moving papers taints the whole proceeding with suspicion and detracts from the good faith of the application. The presentation to this court of the racing bill matter, the arguments growing out of it, and the monstrous deductions which the court is asked to draw from it, were wholly irrelevant to the determination of the issue before us, wholly unnecessary, wholly unwarranted. If possible, the aspersions cast upon the county judge, the recorder, the commissioner of jurors, and the sheriff are even less warranted. The law assumes that public officials will do their duty; and without the slightest evidence to justify a conclusion to the contrary, it is an affront to the court to ask it to assume that these high public officials will enter into a conspiracy with each other to tamper with the jury boxes, and thereby commit a felony, or do aught but their full duty. Such a proposition would be amazing, if it came from any other source.

A report of the Bayne investigating committee was presented to the court for the purpose of showing that the jury lists were, at that time, actually made up of the names of partisan, political, and unfair men. The Bayne investigation was itself partisan and political. Courts can no more be deceived by the operations of committees of this character than can the public. The plain purpose of that investigation was to wreck the political fortunes of the plaintiff in this suit. Whether or not such purpose was laudable is not for us here to say; but a part of the evidence presented for our consideration now is the report of that committee. We are to weigh this evidence as jurors would weigh it. That this partisan and one-sided report, based upon matter gathered in open defiance of the rules of evidence, should be supposed to have any power whatever to convince the minds of judges sitting on an appellate bench, is inconceivable. As a political document to influence votes the report may have had some value; as evidence in a court of justice it is completely worthless.

In calling the court's attention to the Albany Evening Journal and the articles relating to the defendant which have appeared in that paper, the defendant has presented a situation not essentially dissimilar from that which obtains in every county of the state. The names, pictures and caricatures of each of the distinguished litigants in this suit are to be found almost continuously in all the newspapers of the state. Their policies and ideas and sayings are supported and are denounced in newspapers circulating in every corner of the state. It is idle to argue that any one county predominates over other counties in the newspaper discussion of such celebrated characters. That the plaintiff owns the Albany Evening Journal signifies nothing. His paper has not, except on one occasion, discussed the merits of this controversy, and as to the general discussion of the policies and acts of Colonel Roosevelt many papers have surpassed the Journal in bitterness of denunciation. In this age of civilization it is impossible to send lawsuits where newspapers will not reach.

.Therefore this matter reduces itself down to the contention that the plaintiff is the Republican leader of Albany county, and by reason of his great influence in that capacity will obtain an undue advantage in a trial in his own bailiwick. But he is also alleged to be the Republican leader in the state, and apparently he is no more the Republican leader in Albany county than in the state; perhaps not so much so, for, in order to have given his attention to the leadership of the state, he must necessarily have turned over to his lieutenants, to a great extent, the details of leadership in Albany county. Therefore, if his case cannot be tried in any place where he is Republican leader, it cannot be tried anywhere in the state of New York. Both these litigants have grown into proportions far beyond the limits of counties; their fame is wider even than the state—it is national. That a political leader of the stature of William Barnes is a man of tremendous power, wielding incalculable influence, may be admitted; but, unless we assume that the officials of Albany county are willing to lend themselves to the criminal debauchery of the jury system (a proposition which I do not assume, but reject), how can this power and influence of the plaintiff enter the jury box any more in Albany county than in any other county? That the plaintiff is widely acquainted and widely respected in his own county is not the question before us; it is the effect of his political influence that we are asked to consider. Because the Governor of the state is a man of great power and influence and owns a newspaper in Albany county, can he not, just because of these facts, lay the venue of an action in Albany county, the county where he resides, and retain it there? Are the rules of law applicable to the common citizen to be reversed when applied to men of great distinction? Does a person by becoming celebrated surrender the rights guaranteed to him by the law? Surely not; and unless something more than surmise, suspicion, and innuendo is presented, the citizen who has become powerful and conspicuous should not be driven from his home to litigate, when he brings a suit to redress a wrong.

Cases have been cited to us where the venue has been ordered changed. But every case must stand upon its own merits. What has been done in other cases matters little here. Unless we have reason to believe that a fair trial cannot be had in this case in Albany county we cannot interfere. There is no such reason; there is only suspicion. But a citizen cannot be deprived of his rights on suspicion. If the determination in other cases is to influence us, recent instances where life and liberty were in the balance may be cited to show that the courts will not lightly change the place of trial. People v. Hyde, 149 App. Div. 131, 133 N. Y. Supp. 780; People v. Becker, unreported (see decision on appeal, 210 N. Y. 274, 104 N. E. 396). In the Becker Case the defendant moved before the trial judge for a change of the place of trial; but the motion was denied by the distinguished jurist who has since that time been elevated to the bench of the Court of Appeals. In that case the atmosphere was said to be charged and surcharged with opposition to the defendant. The trial attracted more attention than any other court event of modern times. The metropolitan newspapers were filled with accounts of the

case before the trial began. They freely discussed its merits. Not only the liberty, but the life, of the defendant were there at stake. However, in that case it was adjudged that the defendant could have a fair trial in New York county. And, if precedent counts for anything, our own court, by a recent unanimous decision, in a case somewhat similar to this, is committed in opposition to a change of the place of trial. Noonan v. Luther, 128 App. Div. 673, 112 N. Y. Supp. 898. In this case the court, in refusing to change the place of trial, said:

"It [the record] shows an extensive acquaintance by the defendant, and business and political prominence and activity on his part, and also professional and political prominence of his attorneys. These facts are insufficient to justify the order. Lent v. Ryder, 47 App. Div. 415 [62 N. Y. Supp. 400]; Weiant v. Rockland Lake Trap Rock Co., 74 App. Div. 24 [76 N. Y. Supp. 699]. Juries are not likely to be influenced by such unworthy considerations. * * * The learned justice at Special Term based his order largely on the fact that the action has attracted wide attention and has been largely discussed, and that its history at Trial Terms and on appeal had been given wide publication by the newspapers of the county."

On account of the great pre-eminence of the litigants in this suit, no case can be found just parallel to the one before us; but in some respects, particularly in the matter of political prominence and newspaper discussion, the opinion of this court from which I have just quoted deals with the questions presented here.

If this motion had come to us from a private citizen, as the motion did in Noonan v. Luther, there might not have been any hesitation in refusing to change the place of trial. However, in its anxiety to do exact justice to the distinguished defendant in this suit, and avoid even a "suspicion" that he is being denied a fair trial, a majority of this court has ordered the venue changed. But all men stand alike before the law; the great and the obscure, the rich and the impecunious, the statesman and the layman. The courts should not tremble before the great; neither should the fear of criticism cause justice to falter. Unless we would change this venue on the application of the most lowly citizen, we ought not to change it on the motion of Theodore Roosevelt.

The learned Special Term justice exercised his discretion wisely, and his order should be affirmed.

Order reversed, with $10 costs and disbursements, and place of trial changed to Onondaga county.