THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PATRICK RYAN, Defendant.

Supreme Court, Kings Special Term, July 8, 1924.

**Crimes — murder, first degree — motion to change place of trial — defendant claims fair and impartial trial cannot be had in Suffolk county by reason of prejudice against him — affidavits on motion to change place of trial need not show conclusively that impartial trial cannot be had — motion granted.**

On a motion to change the place of trial it is not necessary to show conclusively that an impartial trial cannot be had in the proper county. The statute authorizes a change where there is " reason to believe " that such a trial cannot be had. Neither is it necessary that an experimental trial in the proper county should be required in order to determine whether an impartial trial is impossible.

Accordingly, defendant's motion to remove the place of trial of an indictment for murder, first degree, from Suffolk county to Kings county or some other county in the state, except Nassau county, should be granted where it appears that on the papers and affidavits submitted it is not probable that the defendant can obtain a fair and impartial trial in the county of the venue by reason of the existence of a feeling of bias, passion and religious prejudice against the defendant.

MOTION to remove the place of trial of an indictment for murder, first degree, from Suffolk county to Kings county.

*George W. Hildreth,* district attorney, for the People.

*Philip A. Brennan,* for the defendant.

BENEDICT, J.  The defendant was on May 20, 1924, indicted for the crime of murder in the first degree in having shot and killed one Ferdinand Downs in the town of Brookhaven, Suffolk county.

The crime charged in the indictment was committed on Friday, May sixteenth.  An autopsy was held on May seventeenth. According to the papers submitted, the May grand jury was hastily reconvened on Tuesday afternoon, May twentieth, and the indictment was found on Tuesday evening.  The defendant was arraigned immediately and, over the objection of his counsel, the trial was set for May twenty-seventh.  Thereupon, a stay of the trial having been granted by a justice of this court to enable the defendant to make this motion, the defendant gave notice of the present application.  This is a motion to remove the place of trial of the indictment from Suffolk county to Kings county or to some other county in the state of New York, except Nassau county, upon the ground that a fair and impartial trial of the defendant under the indictment cannot be had in the county of Suffolk.

The ground on which the motion is based may be stated briefly as follows: The defendant claims that because of the fact that he is of the Roman Catholic faith and that Ferdinand Downs, the man he is charged with having murdered, was a member of the organization known as the Ku Klux Klan, and because of the power and influence of that organization in Suffolk county, he, the defendant, will not be able to secure a fair, impartial and unprejudiced jury at his trial.  In support of this contention he has submitted thirty-eight affidavits of residents of Suffolk county and of certain persons who have conversed with residents of that county whose names are mentioned and all of whom depose that there does exist in Suffolk county great hostility towards Roman Catholics; and that a feeling of bias, prejudice and passion exists and is expressed against the defendant wherever men congregate accompanied by expressions of the opinion that the defendant was guilty of the murder of said Downs and that they would see to it that he was found guilty and would be sent to the electric chair.  A great many of the persons interviewed or who have given depositions reside in Islip, Patchogue, Bay Shore and Sayville.  There are also annexed to the moving papers clippings from local newspapers which indicate that there is a greatly aroused state of public opinion in the case.

It is impossible within the limits of this opinion to recite in detail all the alleged statements of persons whose depositions are submitted. It will suffice to say that they plainly show that if they are truth-

ful reports the prejudice against the defendant and the expressed sympathy for the deceased would be likely to prevent a calm and just consideration of the question of defendant's guilt. That the learned district attorney recognizes the truth of this situation is, I think, shown by his offer stated in court and in the opposing affidavits, that on the trial he would be willing to consent to excuse all jurymen from the township of Islip, of whom it appears there are 114 out of a total of 1,842 jurors in the county of Suffolk. Even conceding that he possessed the power to excuse all jurors coming from one town without showing some disqualification in the case of each juror, it certainly seems to me that if so adverse a state of mind exists as to all the jurors in that town it is not unlikely that such prejudice is not wholly confined to the jurors there, as shown by the newspaper clippings which are not exclusively taken from papers published in that town.

I find that in some few cases persons who have made affidavits for the defendant have withdrawn or retracted some of the statements contained therein. I cannot say whether such retractions were brought about by a desire to tell the truth or were induced by some other motive or influence; but eliminating those particular cases enough remains to support the defendant's contention.

In opposition to the motion the learned district attorney has submitted some 160 affidavits from officials and other residents of the county of Suffolk stating generally that they know of no condition existing in Suffolk county that would, in their opinion, prevent the defendant from having a fair and impartial trial in that county.

In respect of these affidavits it should not be overlooked that they are mainly statements of a lack of knowledge on the part of the affiants that any condition exists in Suffolk county that would prevent the defendant from having a fair and impartial trial in that county, and their opinion that he could and would have such a trial. It is only natural that residents and officials of that or of any other county should defend the good name of their county. It would be surprising if they did not. But in the present case their statements of a lack of information or knowledge on the subject under discussion can hardly weigh against positive statements of a contrary expression of opinion, and it is the weight of the evidence rather than the number of witnesses that controls, just as it is a rule of evidence that the affirmative statements of persons who swear to the existence of a fact are entitled to greater credence than are the statements of persons who merely deny any knowledge of the existence of the fact in dispute.

The issue of fact thus created is, of course, one concerning which

opinions of disinterested persons may reasonably differ, at least until after a test has been made by an " experimental " trial in the county of Suffolk, which is the proper county unless a fair and impartial trial cannot be had therein.

If the trial were to take place in Suffolk county and the defendant were acquitted, that result would, doubtless, establish in the minds of many persons the fairness of the trial. If, on the other hand, the jury were to find the defendant guilty as charged, the opposite conclusion might well be entertained by many persons as to the impartiality of the jury; but unless something should occur during the trial to indicate passion or prejudice on the part of the jury the defendant would in that event find himself remediless, even though innocent of the crime charged.

Innocent men have sometimes been convicted under such conditions as are said to exist in Suffolk county to-day, and their innocence has been shown only when it was too late. History furnishes us with many notable instances of the injustice resulting from public prejudice or passion, and even men of good character and moral lives are not free from the dangerous and insidious influence of partisan or religious prejudice.

In these observations I express no opinion as to either what will, or what should, be the result of the trial of this defendant. All that I am required to do in deciding this motion is to determine on the papers submitted whether it appears from them probable that the defendant can obtain in Suffolk county that fair and impartial hearing by the jury to which the law entitles him and every other defendant. It is not necessary to show " conclusively " that an impartial trial cannot be had in the proper county. The statute* authorizes a change where there is " reason to believe " that such a trial cannot be had. Neither is it necessary that an experimental trial in the proper county should be required in order to determine whether an impartial trial is impossible. *Jacob* v. *Town of Oyster Bay,* 119 App. Div. 503, per Jenks, J.

The common law of England, from which we mainly derive our criminal jurisprudence, early recognized the fact that men might be so controlled by prejudice that they would be disqualified to sit in judgment on a person accused of crime. And in order to prevent injustice under such conditions motions to change the place where the trial was had were allowed, where it appeared that a fair and impartial trial could not be had in the county where the crime was committed. Our own law recognizes the same principle, and our criminal procedure · carefuly safeguards the right of a

* See Code Crim. Pro. § 344, subd. 2; Civ. Prac. Act, § 187, subd. 2.— [REPR.

defendant to a fair trial before unbiased and unprejudiced triers of the facts. Code Crim. Pro. §§ 343, 344, 346. Indeed, the law in order to be just must so ordain. Otherwise the lives of all men would be insecure and at the mercy of religious bigotry or partisan intolerance, such as existed in England in the early part of the seventeenth century and which brought about in large measure the exodus therefrom to this land of religious liberty.

It is of the utmost importance that the constitutional rights of a defendant on trial for his life be recognized and preserved — not, perhaps, so much on his account, particularly if he be in fact guilty — but so that public faith in our judicial institutions be not weakened nor destroyed, because nothing will so quickly destroy the maintenance of law and order as would a general belief that unfairness and injustice prevailed in our courts.

It is not my wish to prolong the consideration of truths that are fundamental; nor do I feel it to be necessary to quote at length from judicial opinions in which the subject of a motion of this kind is discussed. I shall only refer to one case in which the Court of Appeals of this state has written the law which I am constrained to follow. The case to which I refer is *People* v. *McLaughlin*, 150 N. Y. 365, wherein Judge Martin writing for the court said, in regard to the right of the defendant to apply for a removal of the action to another county for trial upon the ground that a fair and impartial trial could not be had in the city and county of New York: " That the right thus given is a substantial one and has always been regarded as of great importance to a defendant, is manifest not only from the time it has existed, but also from its paramount necessity to fairly protect his just rights and interests. The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury, is a fundamental principle of criminal jurisprudence. For the protection of persons accused of crime, the law, as a safeguard against local prejudice, has benignly provided this remedy." Pp. 375, 376.

" That jurors are sometimes prejudiced, and courts may be unconsciously biased to the injury of one of the parties, must be admitted. Prejudice is often an insuperable barrier to the fair and impartial administration of the law. Its influence is subtle, insidious and often unconsciously warps the judgment and blinds the intelligence of those surrounded by its atmosphere. But its presence can usually be discovered only from the circumstances and conditions which produce it. In discussing this question in another case it was said: ' But there cannot well be any serious misapprehension as to the existence of facts [showing prejudice against the

defendant], especially where they are of a public nature.  The principal question is as to the inferences to be drawn from them. It [the trial] is the very thing which the law seeks to avoid, when it is seen that the party may, and probably will be drawn into a trial by a jury, who, under an influence of which they may themselves be hardly conscious — an influence which, perhaps, no human sagacity can detect — may pronounce a verdict against him, and conclude his rights forever.  Above all, would it be dangerous to require that he should risk his trial by a panel selected from a community already sought to be influenced by the course of the press; that very panel being personally appealed to by the opposite party's own press, or one put in motion by him, or by some other person.' (*People* v. *Long Island R. R. Co.*, 4 Parker's Crim. R. 602, 604; *People* v. *Webb*, 1 Hill, 179.) '' Pp. 379, 380.

In conclusion, I decide that the place of trial of this indictment ought to be changed from Suffolk county to the county of Kings upon the ground stated, viz., that a fair and impartial trial of this defendant upon the indictment cannot be had in the county of the venue.  The indictment will be set for trial on the first day of the October term in Part VIII, Trial Term, Kings county.

Ordered accordingly.