THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ALZAMON IRA LUCAS, Defendant.

Supreme Court, Monroe County, March 21, 1928.

Crimes — place of trial — impartial trial — case removed from Monroe county to Erie county, under Code of Criminal Procedure, § 344.

Defendant, who is charged with grand larceny, second degree, and with obtaining the signature of a person to a written instrument with the intent to defraud, is entitled to have the trial of his case removed from the Monroe County Court to the Supreme Court of Erie county, pursuant to section 344 of the Code of Criminal Procedure, where the affidavits, newspaper clippings concerning the defendant, and the statements of various residents of Monroe county satisfy the court that a fair and impartial trial cannot be had in the county where the indictments were found.

MOTION by the defendant to change the place of trial.

*William F. Love* [*William L. Clay* of counsel], for the plaintiff.

*Leo J. Rice,* for the defendant.

RODENBECK, J. This is a motion to change the place of trial of two indictments, one for grand larceny in the second degree and one for obtaining the signature of a person to a written instru-

ment with intent to defraud. The motion is made upon the ground that the defendant cannot have a fair and impartial trial in Monroe county. (Code Crim. Proc. § 344.) It is supported by the affidavits of the attorney for the defendant, numerous newspaper clippings concerning the defendant and the charges against him, and statements of various residents of Monroe county to the effect that they had heard about the case and that a fair and impartial trial cannot be had in Monroe county. The motion rests, and must be determined, upon the facts and circumstances and when they point to such a bias or prejudice against the defendant in the community that a fair and impartial trial cannot be had, the defendant is entitled to a change of the place of trial as an absolute right, and not as a mere matter of discretion. (*People* v. *Williams,* 106 Misc. 65, 74.)

The striking fact about the prosecutions of the defendant is that they have continued in the county for a period of over five years, the net result of which, however, is that only two indictments have survived the attack of the defendant and are ready for trial. As early as 1922 the police authorities of the city sought to convict the defendant of practicing medicine without a license. This particular offense was dwelt on in the newspapers, on account of the nature of the defendant's mode of livelihood, and, after the matter had been transferred to the grand jury and an indictment found, the indictment was set aside. Later, nine separate indictments were found against the defendant, one of which was dismissed on motion of the district attorney, six were dismissed by the court, and the remaining two are the ones in which the defendant now asks a change of place of trial on account of the bias and prejudice against him that these years of prosecution have caused. The situation of the defendant is unusual and out of the ordinary run of such cases. The defendant it is claimed is a colored man and this fact, with the nature of his occupation, has attracted unusual public attention to the charges against him. In addition to these considerations, the district attorney has been extraordinarily zealous in prosecuting the defendant and considerable unnecessary personal animosity between the defendant's counsel and the assistant district attorney, sufficiently revealed in the affidavits on this motion, has added fuel to the public interest, so that the charges against the defendant have been unusually dwelt on in the public press, and, unnecessarily, brought to public attention.

The statements in affidavits made by the defendant's attorney may be considered so far as they give any facts or circumstances bearing upon the merits of the motion. The affidavits of the attorney, instead of a party, may be accepted where he is familiar

with the facts and circumstances, so that he can make an affidavit with respect to them. In addition to the statements made by the defendant's attorney, numerous newspaper articles have been presented on this motion, which show an active participation by the press of the city in publishing the charges made against the defendant. These newspaper items may be considered on a motion of this kind and may, in themselves, be sufficient, if the court is satisfied that they have created an atmosphere in the county rendering it improbable that the defendant can have a fair and impartial trial. (*People* v. *Williams*, 106 Misc. 65; *People* v. *Webb*, 1 Hill, 179.) There are a great number of these newspaper articles and it is not practicable to refer to all of them on this motion. The headlines of some of the articles are in large type, and in some instances the articles are illustrated by a picture of the defendant or of his wife and children. As early as 1922 the defendant claimed that he was being persecuted, as appears by an article in one of the newspapers of the city under date of December 13, 1922. In an issue of that date, in another newspaper, there is printed a letter claimed to have been mailed to the defendant, in which the statement appears: " The all seeing eye of the Invisible Empire is upon you. If the police are not capable of dealing with you as you deserve, the Klan stands ready to enforce decency. It rests with you whether you leave the city quietly, or whether you force the Invisible Empire to take action." At this time the defendant was merely charged with practicing medicine without a license. The indictment, founded upon this charge, was subsequently set aside. In a later issue of the same newspaper, under the heading, " Lucas has no fear of Ku-Klux-Klan," the defendant is alleged to have said, among other things: " I fear it no more than I do the C. C. C., which has failed in its efforts to drive me out of the city. ' What do you mean by the C. C. C., doctor? ' he was asked. ' Why, the Catholic, the Catholic, the Catholic,' was his reply." The same letter with reference to the Ku Klux Klan was published in part in another newspaper in the city. The headlines of other articles read: " Cult leader is seized as ' fake ' doctor." " Police say alleged psychic expert has unsavory record and order him out of city." " Indictment gives ' Doctor ' Lucas jolt, but he expresses hope of acquittal on charge of practice of medicine." " Pre-natal sex control faker driven from city by the *Herald* exposure." This article contains this statement: " Lucas was exposed through the efforts of the *Herald*. His criminal record in the West was known to a member of the *Herald* staff, who called the attention of the Police Department to Lucas' activities in this city when he came here from Syracuse a week

ago," and then under the caption, "Here's His Record," follows a list of his alleged arrests and charges against him in other cities. A further headline reads: "Lucas claims persecution by police." In an article sent to a local paper from Watertown there is a reference to the arrest of the defendant, and his relations to a Home Betterment Club in that city. These are only samples of headlines and articles that have appeared, beginning with the defendant's arrest five years ago and continuing, with some interruptions, to the present time. Every new move in the prosecution of the defendant was the occasion for fresh articles until the general public has become familiar with the charges that have been made against the defendant and dismissed, except the two remaining indictments. On the Sunday following the return day of this motion, an article appeared in one of the local papers in type an inch long and extending across an entire page, "Clay Denounces Lucas' Tactics," and then follows the statement that the defendant's counsel was charged "with making efforts to intimidate witnesses for the people by payment of money." This is not a case of an isolated article or two calling attention to a charge made against a defendant, but a persistent series of articles, tinctured with more or less animosity, directed against the defendant. This case should not be tried by the newspapers nor should the defendant be convicted upon "general principles" but upon the law and the facts decently, orderly, and impartially presented in a court of justice. The application is also supported by petitions signed by a great number of people residing in Monroe county, stating that they have read the articles concerning the defendant in the newspapers; that they have drawn inferences therefrom that the defendant was unquestionably guilty of the crime charged against him, and that he could not have a fair and impartial trial in Monroe county. Statements of persons who have read newspaper articles and formed an opinion may be considered. (*People* v. *Williams,* 106 Misc. 65, 74; *People* v. *Sharp,* 5 N. Y. Cr. 155.)

The statute does not prescribe what proof shall be necessary to justify a change of the place of trial, and it is only required that the evidence submitted shall fairly and reasonably convince the court that a change of the place of trial should be had in the interests of justice. The practice of changing the place of trial from one county to another, in order to secure a fair and impartial trial, comes down to us from the common law and in a proper case is an absolute right of a defendant. He is presumed to be innocent until his guilt has been established, and where a bias and prejudice has been created against him, he enters upon a trial with the presumption of guilt rather than a presumption of innocence. No

defendant, whatever his color, race or character, should approach a trial with such a burden.

In addition to what has been said, there appears to be an attitude on the part of the assistant district attorney, who has charge of the case, which is hardly in keeping with the calm and deliberate administration of the law which every defendant is entitled to in a criminal case. In one of the affidavits filed he has gone entirely beyond the charge made against the defendant, and has presented statements connecting the defendant with the commission of another crime, the presentation of which could have been made with no other purpose than to prejudice the court against the defendant on this motion. In another affidavit he charges the defendant, or persons on his behalf, with attempting to intimidate witnesses, and charges the defendant's counsel with having made an effort to pay certain moneys to witnesses if they would decline to appear and testify against the defendant. The court is satisfied that no improper methods were used by defendant's counsel in obtaining a statement from the complaining witness and that his conduct of the case has been ethical in all respects despite criminations and recriminations on both sides. The zeal of advocacy may be carried beyond the bounds of proper professional conduct that is to be expected of a prosecuting officer. And, finally, he asks to have the case sent to another justice on the ground that the justice before whom the motion is made has prejudged the case. The motion came on before a justice who had, out of a sense of duty, passed upon the various motions, in this acrimonious prosecution, as the attorney saw fit to bring them on at Special Term, and, because of his connection with the case, he has been charged with having prejudged the motion to change the place of trial. These matters are referred to as showing the animus of the assistant district attorney and as bearing upon the question whether a fair and impartial trial can be had in Monroe county. The only fair and reasonable conclusion upon the evidence before me, based upon the decisions of the courts on similar motions, is that, in the interests of justice, the defendant should be tried in a county where he will not be met by the atmosphere that would surround him in a trial in the county of Monroe. (*People* v. *Long Island R. R. Co.*, 4 Park. Cr. 602; *People* v. *Diamond*, 36 Misc. 71; *People* v. *Georger*, 109 App. Div. 111; *People* v. *Jackson*, 114 id. 697; *People* v. *Ryan*, 123 Misc. 450; *Barnes* v. *Roosevelt*, 164 App. Div. 540; *People* v. *McLaughlin*, 150 N. Y. 365.)

The defendant is entitled to a fair trial, the same as any other man. He should be treated with impartiality. He should not be required to defend himself in a general adverse atmosphere freighted

with prejudice and bias to such an extent that his presumption of innocence becomes a fiction and a fair and impartial trial becomes a farce. " Prejudice is often an insuperable barrier to the fair and impartial administration of the law. Its influence is subtle, insidious and often unconsciously warps the judgment and blinds the intelligence of those surrounded by its atmosphere." (*People* v. *McLaughlin,* 150 N. Y. 365, 379.) " Justice, as far as possible, must be administered without even the appearance of partiality." (*Barnes* v. *Roosevelt,* 164 App. Div. 540, 542.) " The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury, is a fundamental principle of criminal jurisprudence." (*People* v. *McLaughlin,* *supra,* 375.) " The fairness of a trial should be above and beyond suspicion, and no court should allow a trial by a jury of a vicinage, the general opinion and belief of which, upon the matters involved in such trial, either party has industriously, through newspapers, sought to form. To do this would simply encourage parties, in advance of actual trial, to create prejudice and bias, in the hope of benefit to follow from a legal investigation before men, some of whom, at least, might have obtained their views and judgments of a cause elsewhere than in the court room." (*Moulton* v. *Beecher,* 52 How. Pr. 182, 186, 187.) These are the fundamental principles of the administration of the criminal law that protect this defendant and in the application of which he is entitled to a change of the place of trial.

The motion to send the motion to another justice is denied, and the motion to change the place of trial is granted, and the case is removed from the Monroe County Court to the Supreme Court of Erie county.

So ordered.