THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SVEN O. SANDGREN, Defendant.

Supreme Court, Special Term, Bronx County, November 6, 1947.

Samuel J. Foley, District Attorney (Marvin Lechtman of counsel), for plaintiff.

Samuel Segal for defendant.

HAMMER, J. By this application the defendant seeks transfer of a criminal action from the County Court to the Supreme Court, and also for a change of venue. Basically the ground upon which defendant seeks to have the action transferred from the County Court of the County of Bronx to a term of the Supreme Court, County of Bronx, and also for a change of venue to a term of the Supreme Court to be held in some other county, is his assertion as follows:

On July 1, 1947, in the county of Bronx, a boy, Stanley Balaban, aged eleven years, was set upon by dogs, allegedly vicious, and permitted at large by defendant, their owner, and so bitten and injured that the boy died as the result. On September 27, 1947, the defendant was indicted by the Grand Jury of Bronx County, charged with manslaughter in the second degree in that he kept the dog or dogs, knowing the propensities thereof, and willfully permitted such dog or dogs to be at large, in violation of subdivision 3 of section 1052 of the Penal Law. To this indictment the defendant pleaded not guilty. Upon the happening of the occurrence and since, every newspaper in the city of New York, and particularly "The Bronx Home News," publicized news reports thereof, and the latter, cir-

culated largely in Bronx County, has given the matter and case "sensational publicity," referring to the dogs as six English bull terriers, a breed for pit fighting, to the slashing to death of the boy, the mauling of a policeman, the shock, hysteria .and subsequent illness of the parents, and the possibility that another person was mauled to death by the same dogs.

More particularly, the defendant makes the following assertion: "The wave of unfavorable sensational publicity which this case has received in the 'Bronx Home News' has already completely overwhelmed and prejudiced every prospective juror in Bronx County. The extent of the prejudice which it has created is, of course, unascertainable. The jurors may be hardly conscious of it, and yet it is there, indelibly implanted by the repeated printing of the same articles, again and again. In view of the strong public sentiment which has been stirred up against me, I respectfully submit that it would be manifestly unfair to place me on trial before a jury selected from the very county where this pretrial prejudicial reporting has taken place."

Copies of the "Home News" articles are attached to the papers. From them and defendant's interpretation of them, referred to above, he alleges the conclusion that "the cumulative effect of these articles * * * has been to engender a waive of unfavorable feeling against me * * *", and "that the feeling of the public in Bronx County has been aroused against me" as "they have been led to believe that my dogs were bred for the sole purpose of engaging in pit fights, and that they were savage, vicious, killer dogs. I believe that, because of these articles, I will not be able to obtain a jury which will be completely free from bias and prejudice, and that as a result I will be unable to obtain a fair trial in the County Court of Bronx County."

This application is made pursuant to section 344 of the Code of Criminal Procedure as a matter of absolute right (*People* v. *McLaughlin*, 150 N. Y. 365, 376). Under·that section defendant is entitled to apply to the Supreme Court for such removal of the action before trial and to apply for a stay until the decision is made (p. 377). There is nothing in the papers to indicate that the application has not been made in good faith and the state of mind of the defendant and his friends is readily understood. The right of a person accused of a crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury is a fundamental principle of criminal jurisprudence. The remedy of change of venue is provided as a safeguard

against local prejudice which may exist in the community where the alleged crime occurred.

There are two separate remedies provided under the section and apparently here sought: one to transfer the action from the County Court to the Supreme Court, and the second for a change of venue. It is not necessary that the indictment be first transferred to the Supreme Court in Bronx County to seek change of venue on the ground that a fair trial cannot be had in the county of indictment (*People* v. *Green,* 201 N. Y. 172; *People* v. *Grout,* 166 App. Div. 220; *People* v. *Fay,* 48 N. Y. S. 2d 2). The defendant's papers do not appear to state good cause shown for removal of the action from the County Court to the Supreme Court and upon argument defendant's counsel stated that no charge was made that the judges serving in the Bronx County court cannot act fairly and impartially in the matter or that they cannot protect adequately the rights of the defendant.

No important questions, either of fact or law, are shown which require the removal from the one court to the other within the county. The grounds therefore are limited to removal for alleged inability of the defendant to obtain a fair and impartial trial in Bronx County (*People* v. *Hyde,* 146 App. Div. 633). A change of venue may not be granted unless there is clear proof presented that there is a serious doubt whether the accused will receive the full benefit of the presumption of innocence until proof of guilt beyond a reasonable doubt has been adduced against him (*People* v. *Hyde,* 75 Misc. 407, affd. 149 App. Div. 131). The court is to consider all the facts and surrounding circumstances, including affidavits presented of residents, tending to show local prejudice. Where it appears that there is a strong probability that bias exists throughout the community, the defendant should not be compelled to take the risk of trial before a jury whose members, or some of them, are influenced by adverse sentiments which may not be discovered by the usual course of examination or appreciated by the jurors themselves (*People* v. *Diamond,* 36 Misc. 71). A notorious character of evil repute in the local community, real or otherwise, resulting from a newspaper campaign, preventing fair trial on the particular charge, may be considered with all the other facts shown. That is not what is urged here. The charge here is that articles in a particular newspaper were of such a sensational character as to excite local popular passion or prejudice so that defendant cannot have a fair trial. The **mere existence of widespread comment, or even of the wide-**

spread publication of the belief or opinion of the press, of the defendant's guilt, does not show serious doubt whether the accused will receive a fair trial. The press is entitled to publish the news, together with fair comment. Clearly this occurrence was news.

If the facts published are merely those of the basis of the charge in the indictment, although stated with the colorful and attractive style of journalism sometimes referred to as " sensational," together with surrounding circumstances or other similar happenings, accompanied by opinion and comment, that does not warrant the holding of serious doubt, as to defendant's obtaining a fair trial. The sentiment, bias and prejudice of the people of the community against the defendant, whether influenced by the press or otherwise, are the only grounds which may be considered in determining whether there is serious question of the defendant's obtaining a fair trial. (*People* v. *Squire,* 1 N. Y. St. Rep. 534; *People* v. *Sharp,* 5 N. Y. Crim. Rep. 155; *People* v. *Sammis,* 3 Hun 560; *People* v. *Diamond, supra*; *People* v. *Georger,* 109 App. Div. 111).

Undoubtedly, prejudice or bias is an insuperable barrier to the fair and impartial administration of justice and constitutes a subtle, insidious and often unconscious warping of judgment and hindrance to intelligent reasoning. Printed matter is also recognized as a ready means of propagating such a state of mind. It may well be that an intensive campaign vigorously pressed by a newspaper with sufficient circulation might bring about such a result in the public feeling or opinion of a community that it would be open to serious question that one charged with the crime publicized would obtain a fair and impartial jury trial. That does not appear to be this case. The facts in the indictment present an occurrence somewhat fearsome. No one can contemplate an attack by six bull terriers on a small boy or any human being without some feeling of repugnance and anxiety. To conclude therefrom that one charged with responsibility therefor cannot be given a fair trial in a community of some million and a half persons would seem to lead to the conclusion that such a person could not be fairly tried anywhere. The facts stated by defendant do not lead to the conclusion that the newspaper articles in question have led the people of Bronx County to such a state of mind, as defendant alleges. Even the particular newspaper to which reference is made, which has a circulation of some 50,000 copies daily, could hardly claim that amount of influence. Newspaper **articles alone are not ground for removal of the place of trial**

from the county of indictment to another county in a spectacular criminal case, or one in which the charge is based upon abhorrent facts (*People* v. *Brindell,* 194 App. Div. 776).

Since defendant has not shown by clear evidence that it is probable he cannot obtain a fair and impartial jury trial in the County Court of Bronx County, the application is denied.